on behalf of both Mr. Armenta-Romero and Mr. Hernandez-Palma, I will endeavor to save 90 seconds for rebuttal. I really do hope that this pleases the court. It's always an honor to be called to the Ninth Circuit. It is a special honor to be before this particular panel. But as much as I want to spend time flattering you, I feel like I need to get to the facts of the case. We would prefer that too, actually. Fair enough. So this is a case where there are no heroes. I want to get out at the beginning that this was a tragedy. It was a terrible thing. And it is, it's just a very sad story. And I have looked at all the photos from the autopsy and what happened to Ms. Capastran and it was awful. But she died because she was pregnant and diabetic. And those were not known to Mr. Armenta-Romero nor to Mr. Hernandez-Palma. And I believe that... What did they know? What does the record show that they did know about her? So what the record shows is that in the days before the attempted crossing, they had met in Tijuana and they had tried to see if she would be able to make the walk. And that they had walked her around the park a couple of times and that she had become easily winded and that she didn't... They were thinking about calling the trip off because they were like, well, we're not sure that she can make it. And they were thinking about having someone else do it. Well, they were saying, yeah, we're not going to do it. But Ms. Capastran-Ochoa and her husband, Mr. Razo, really wanted to get back to the United States. And I think given that she's pregnant, we can figure out exactly why she wanted to get back to the United States so quickly. So when they decided to make the trip, the big problems with their provisions, as far as I could see, is that they didn't take any insulin and that the foods they took were heavily sugared foods. If you were trying to get someone to go into an arrest state from diabetes, you could hardly do worse than what they had brought along with them. It just wasn't designed. I don't know under what conditions she could have survived on that particular diet given her conditions. Did they know she was diabetic? No. They didn't know she was diabetic and they did not know she was pregnant. That is firm in the record. Did she know she was diabetic? Oh, yes. So did she bring her own insulin? No, there was no insulin brought. But in her medical records, it's clear that she is a diabetic and that was known to her and to her husband, but not to Mr. Armenta-Romero and to Mr. Hernandez-Palma. The autopsy says ketosis, which my understanding is that's largely related to the diabetes and the gestational diabetes, which makes it even worse. So that was the big unknown factor. And this gets into the heart of the two issues. The substantial risk. I mean, I always feel strange talking to a panel member about a case that they have written. But in Garden Hire, the court was very clear that you have to be aware of the risk. It's not enough to do something that's risky. You have to know that you were doing something that's risky. So when that kid pointed the laser pointer at the plane a half mile away, just doesn't know that the laser is going to spread out a little bit and blind the entire cockpit. That's just not a commonly known fact. One of the things that stands out to me about this case is, if the substantial risk was going to be applied because of the nature of the journey, shouldn't Mr. Armenta and Mr. Hernandez-Palma get the increase just because of Mr. Razo? If you don't think that the enhancement applies just because it's a 25-mile walk, then it seems to me that the facts that make this dangerous, that make it risky, and the facts relied upon by the district court, the district court finds that Mr. Armenta-Romero and Mr. Hernandez-Palma didn't know about the diabetes, didn't know about the pregnancy, and those are the facts that made it dangerous. So I think that's the key finding for the substantial risk. The judge very clearly relies on those facts. I mean, she also relies on the fact that they walked her around the neighborhood and that she couldn't make it around the neighborhood. There's no doubt about that. But I don't think that's enough by itself to make it a substantial risk of injury or death. So the other issue I brought is the barrage issue, the resulting in death issue, and this is an issue that really does deserve some clarity from this court. Right now, there are two opposing views of the law as it is being dispensed in the Southern District. Some courts believe that if someone dies, no matter how it happens, during the course of an alien smuggling, if they are struck by lightning, that is going to count, whereas I think under barrage, it's now clear that you need to have some sort of causation. You need to have a proximate causation. And for this case, Ms. Capistrano-Ochoa, her diabetes and her gestational diabetes, that might have killed her independently. It's not something where it was particularly no doubt about it, this was a cause of death. I don't think that, I mean, she. Wait, so this was gestational diabetes? I think it was during pregnancy. That's why I'm saying gestational. Because that really makes a difference in how you would treat it or what would be necessary to do. And being fair to Ms. Capistrano-Ochoa, I mean, she does have medical records. She did go to a doctor. She had been prescribed insulin and whatnot, and this was very early in the pregnancy. I believe the fetus was about three months. So, you know, I shouldn't say that there's a diagnosis of gestational diabetes. That's not in the record. But there is the fact that she's pregnant and the fact that she's diabetic. Those are both easily in the record. And to say that these two gentlemen caused her death I don't think is fair. I think that the fact that she died is a tragedy and it's horrible, and I saw her children at sentencing and I feel terribly for them. But these fellows didn't kill her. She died because of complications that were unforeseen and unforeseeable to them unless they were to be told that, hey, she has this special condition. So it seems to me that this is the kind of case. This distinguishes it from the other resulting in death cases. Our other resulting in death cases basically come in two varieties. We have somebody who gets in a van and the van tips over and someone gets killed. Or we have somebody who's crossing through the mountains, there's a snowstorm, and somebody freezes to death. This was a January crossing or a December crossing, and it was cold, but it wasn't freezing. It wasn't that kind of, it wasn't an exposure death because of hypothermia. This was a death caused by her illness. Mr. Sugman, I'm curious about your view as to the findings of fact that the trial court made with regard to recklessly creating a substantial risk of death or serious bodily injury, whether that necessitated a clear and convincing standard rather than the preponderance of the evidence standard. The trial court judges, I understand, didn't specify, and there is Ninth Circuit law that we can find clear and convincing evidence from unobjected two portions of the pre-sentence report. Yes, and I did ask for an elevated standard of review. And it comes down to what, I mean, we don't dispute the fact that she was walked around the park beforehand. We're not saying that that didn't happen. We're saying that that doesn't by itself constitute enough evidence to say, oh, well, that's necessarily a substantial risk. I made this analogy to the district court, and it didn't work there. But, hey, why not try it again? You know, I do some long-distance running races, and every time I go, there's somebody, even many people who are at the starting line, and I think, ah, they're never going to finish. And I'm invariably proved wrong. And, in fact, on Sunday they ran the Rock and Roll Marathon in San Diego, and I came into work on Sunday at about 1.30, and I saw the people making it the last 26 miles, the ones who've done the six hours or whatever the cap is. And there were folks that were using walkers, and they were making it. So, you know, it just, this was a tragedy. This was a horrible thing, but the three-year sentence, the three-year minimum mandatory was sufficient. These two guideline enhancements are the things that created the 57 to 71 range. 36 was fair for this case. That's about double to two-and-a-half times what an ordinary alien smuggling would get. I see I only have a minute remaining. If I could reserve that. We'll give you the minute. I just want to ask you one question. Of course. Didn't they plead guilty to smuggling resulting in death? When we pled straight up and at the colloquy when we said the factual basis, we admitted that they crossed them from Tijuana, I'm sorry, through the Otay Mountains into the United States and that Ms. Capistran Ochoa died during that journey. I was very careful, I mean, as you might imagine, I was very careful not to put any causation language in there. But what is the charge that they pled? Oh, they pled guilty to a resulting in death. So to the extent it could be considered as a challenge in the guilty plea, but I'm not bringing that challenge. I'm not saying that there is. No, no, I'm saying does that not establish the enhancement? Well, if you find that all resulting in deaths encompass the definition of causation as explained in Barrage, which was, I think, no, it was decided before the plea, then yes, Your Honor. But Barrage was a jury trial verdict. That's correct. And that distinguishes it from a plea in terms of causation may have been established by the plea here, whereas Barrage, it was a lack of testimony at trial. That's correct. So that's a pretty important way to distinguish Barrage, isn't it? It's a fair way to distinguish. Okay, thank you. Thank you very much. Good morning. My name is Alexandra Foster, and I'm here representing the United States on this matter. Judge Wardlaw, just to clarify as to the reasons for Ms. Capestran's death, the pre-sentence report, paragraph 6, it indicates that an autopsy was performed. She died from hyperglycemia and ketoacidosis due to diabetes. It says diabetes mellitus. I'm not sure whether that means gestational diabetes or not. But it does also indicate that a contributing factor in her death was hypothermia. And so we're not just talking about the diabetes. When she was found, she was found with significant amounts of different types of drugs. And so although she did not have insulin, she did have other types of drugs. Presumably those were meant to, at least for the short term, control her diabetes. As I'm sure the judges are aware, in this situation, what she'd been told was that it was a one-and-a-half day to two-day walk. She'd been told that it was going to be flat, and she'd been told that the hardest part was going to be to get over that fence. And that's what she understood, and that's what she brought the drugs for. It turns out that that is not what happened. What happened was that these individuals were climbing through the rugged Otai Mountains up and down, and ultimately after, as of day four, she ultimately died. And that's paragraph 9 of the pre-sentence report. Let me confirm that, Your Honor. Yes, that's correct. And that was unobjected to? That's correct. I think that there are, as I understand the arguments that Mr. Zugman has set out, there are a couple of things that I would just like to focus on. I understand that Mr. Zugman relies upon garden hire, and obviously Judge Wardlaw that you wrote that. Garden hire is an 18-year-old kid with a laser pointer. It's very different from two individuals who are both seasoned coyotes who knew that this victim got winded walking around a flat city block. This case is much more similar to Rodriguez-Cruz, where that plus 8 was put into place, even though the defendants argued that this had been a freak snowstorm and that they could not have planned for that kind of a thing. It seems like it is analogous to this situation where they say, we couldn't have known, we couldn't have known that Ms. Capistran was diabetic. That is fair. They didn't know that until, it depends on where you are in the record. There is evidence in the record that they did find that out between days 2 and 3 as they were hiking through the mountains, and so prior to her death. That being said, it is fair to say that when they took off on this trip, there is no evidence in the record that they knew that she was diabetic. And so when they did take off, it is fair to say that they didn't know she was diabetic. That being said, like in Rodriguez-Cruz, the court should find that even though it was not foreseeable, I mean even though it was foreseeable that she would not have been able to make it over these mountains given the fact that she couldn't make it around a flat city block. I don't really have anything additional. What's the burden of proof with regard to both enhancements in terms of the findings of fact? It is my understanding that there really was not a lot of debate about that in the district court. But even if one were to take that the burden of proof was the highest, was clear and convincing evidence, that is true here. There were objections that were filed to the pre-sentence report. Judge Banchivengo did address those objections. All of the things that were relied upon by the judge when she reached the determination that what the defendants did required that plus eight uptick were not anything that had been at issue. The facts were not at issue between the government and the United States. I mean between the government and the United States. That's not exactly my question. My question, and I'm sorry if I wasn't a little bit clearer, did either one of the enhancements or both require proof by clear and convincing evidence? And if so, did the trial court judge indicate that any findings were made by clear and convincing evidence? Right. The judge did not, to my recollection, the judge did not indicate, did not indicate whether the standard was clear and convincing evidence or not. I guess all I was trying to say is that that was just never at play. Yeah, well, it's at play now because I asked you. Is that the standard? That's fair. I don't know the answer to that. Okay. If it is, was there sufficient evidence in the pre-sentence report? And as I understand the Ninth Circuit case law, we can find based on non-objective portions of the pre-sentence report that it meets the higher standard if we decide the higher standard applies. Is there sufficient evidence for us to do that here? Undoubtedly, yes. These individuals were seasoned foot guides. That is set out in Paragraph 16, 20, and 21 of the PSRs. The PSR, actually both PSRs. These individuals, both Mr. Hernandez and Mr. Armenta, knew of the victim's limits. That is set out in Paragraph 8 of the PSR. The appellants lied to the victim and her husband. That's set out in Paragraph 7 and told them it was going to be flat in a day and a half. In fact, it was a rugged terrain. That's set out, as the court accurately points out in Paragraph 9. All of those are set out in the PSR. And, therefore, it is the government's position that, yes, there was sufficient amount of information in that PSR that was not objected to that Judge Benchabango could have relied upon. Is that sufficient? Isn't the judge supposed to specifically acknowledge the heightened standard and then lay out the findings instead of just a general adoption of the PSR? I believe, Judge Worlalli, that she did actually lay out the findings. She may not have said, I'm finding this by a clear and convincing standard, but she did go into some detail as to why it was that she was reaching the conclusion that she was as to both the plus 8 and as to the plus 10 for the resulting death. I don't mean to be too difficult, but why is it that you're unwilling to take a position as to what the standard is for the two enhancements? To be fair, I'm not unwilling. I just don't know the answer to the question. Okay, well, that's fair. Thank you. That's what I don't want to do. No, I appreciate that. It's to say something that's just not right. No, right. Thank you very much. That's actually a great answer. Thank you. But there are no further questions. Thank you, counsel. Thank you. So to address the one remaining issue, it appears, the clear and convincing evidence, I did ask the court to apply the clear and convincing evidence standard. I had interested the court to have implicitly overruled it and found everything a preponderance. That's how I had read the record. The judge, when Judge Benchavango made her findings, split the baby in the sense that she found that Mr. Hernandez-Palma and Mr. Armento-Romero definitely didn't know about the diabetes or the pregnancy until the trip was well underway. But Judge Benchavango found that because they'd walked her around, that was enough. It's my opinion that that's not enough. That by itself is not clear and convincing evidence. Does it beat the preponderance of the evidence standard if you're wrong on the burden of proof? Of course I don't think it meets the preponderance of the evidence standard. So with that, I submit. Thank you, Your Honors. Thank you, counsel. Thank you both very much. The case history will be submitted.
judges: Reinhardt, Wardlaw, Bennett